UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES                              1:21-CR-195 LJV (MJR)

                                           REPORT AND
                                           RECOMMENDATION

        v.

LAIRON GRAHAM,

                        Defendant.

This case was referred to this Court by the presiding District Judge, the Honorable

Lawrence J. Vilardo, pursuant to 28 U.S.C. §636(b)(1), to handle all pre-trial matters and

to make a recommendation as to all dispositive motions. (Dkt. No. 11) Before the Court

is defendant Lairon Graham's motion to dismiss Counts 2, 3 and 5 of the Indictment. (Dkt.

No. 19) For the following reasons, it is recommended that Count 3 and Count 5 of the

Indictment be dismissed without prejudice, and that defendant's motion otherwise be

denied.[1]

## BACKGROUND

On August 25, 2021, a criminal complaint was filed against Lairon Graham

("defendant" or "Graham") charging (1) possession with intent to distribute cocaine base

and fentanyl on August 25, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(C) of

Title 21 of the United States Code; and (2) being a felon in possession of ammunition on

---

[1] Graham filed other pretrial motions, including omnibus and suppression motions, on March 28, 2022. (Dkt. Nos. 48, 49) The Government responded to these motions on April 26, 2022, defendant's reply is due on May 2, 2022, and oral argument is scheduled before this Court on May 12, 2022. (Dkt. No. 47)

August 25, 2021, in violation of Sections 922(g)(1) and 924(a)(2) of Title 18 of the United States Code. (Dkt. No. 1) Graham made an initial appearance before this Court as to the complaint on August 26, 2021, at which time the Government moved for Graham's detention. (Dkt. No. 2) Following a detention hearing on September 7, 2021, the Court ordered that Graham be detained. (Dkt. Nos. 5, 6)

During the initial appearance on the criminal complaint, the Government sought to exclude time under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* (the "STA"), from August 26, 2021, the date of Graham's initial appearance, through November 30, 2021. (Dkt. No. 2) The practical effect of the request was that the Government would not be required to comply with the STA's rule that an indictment must be filed within thirty days of the initial appearance, or the criminal complaint against Graham would be subject to dismissal. Counsel for the Government provided reasons on the record as to why it was requesting an exclusion of time under the STA which would effectively extend its time limitation for filing an indictment from thirty days to over three months. Specifically, the Government represented that it would use the excluded time "to gather discovery materials, provide voluntary discovery to defense counsel…allow adequate time for defense counsel to review the discovery with his client thereby providing effective assistance of counsel and continuity of counsel during this period." (Dkt. No. 19, pg. 1) The Court noted that it assumed there would also be discussions of a potential pretrial resolution during the excluded period, prior to the filing of an indictment, which could also benefit defendant. The Government responded, "that is accurate." (*Id.*) Defense counsel stated that he had "no objection [to the exclusion of time] under those representations." (*Id.*) The Court granted the request for the reasons stated by the Government and

excluded STA time through November 30, 2021. The Court then scheduled a Rule 48(b) conference for November 30, 2021.[2]

On November 30, 2021, immediately prior to the scheduled Rule 48(b) conference, the Government filed a five-count indictment against Graham. (Dkt. No. 9) The Indictment charged (1) conspiracy in violation of Section 846 of Title 21 of the United States Code, from on or about August 24, 2021 through on or about August 25, 2021, to possess with intent to distribute and to distribute 40 grams or more of fentanyl and cocaine base, in violation of Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) of Title 21 of the United States Code, and to use and maintain a place for the purpose of manufacturing, distributing, and using fentanyl and cocaine, in violation of Section 856(a)(1) of Title 21 of the United States Code; (2) possession with intent to distribute 40 grams or more of a mixture and substance containing fentanyl on August 25, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(B) of Title 21 of the United States Code; (3) possession with intent to distribute cocaine on or about August 25, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code; (4) using and maintaining a drug-involved premises at 454 Davey Street, Lower Rear, Buffalo, New York, for purposes of

---

[2] Rule 48(b) of the Federal Rules of Criminal Procedure provides that "[t]he court may dismiss…[a] complaint if unnecessary delay occurs in…presenting a charge to a grand jury." It is this Court's routine practice to set a Rule 48(b) conference date at the conclusion of every initial appearance on a criminal complaint. The purpose of the Rule 48(b) conference is to ascertain the status of the case with respect to the filing of an indictment. If an indictment has not been filed by the Rule 48(b) conference date, the complaint is subject to dismissal by this Court at that time. In some cases, an indictment is filed before the scheduled Rule 48(b) conference and the proceeding is moot. In other cases, counsel for defendant and the Government appear at the Rule 48(b) conference and request a further exclusion of time under the STA before the indictment must be filed, for purposes of continuing pre-indictment plea negotiations. Upon making specific findings on the record that the interests of justice favor the exclusion of time, and that the exclusion of time may benefit defendant by, *inter alia*, resulting in a pre-indictment resolution, this Court will typically grant the exclusion and set a new Rule 48(b) date some time in the future, depending on the length of time agreed upon by the parties.

manufacturing, distributing, and using fentanyl and cocaine, from on or about August 24, 2021 through on or about August 25, 2021, in violation of Section 856(a)(1) of Title 21 of the United States Code; and (5) being a felon in possession of ammunition on August 25, 2021, in violation of Sections 922(g)(1) and 924(a)(2) of Title 18 of the United States Code (the Indictment").[3] (*Id.*)

When the parties appeared before this Court for the scheduled Rule 48(b) conference, the Government informed the Court that the Indictment was filed earlier that day, and asked to convert the proceeding to an arraignment. (Dkt. No. 12) Following Graham's arraignment and his entry of a not-guilty plea, defense counsel made an oral motion to dismiss the Indictment. Defense counsel indicated that contrary to the representations made by the Government at the initial appearance on August 26, 2021, the Government had not provided defense counsel with any discovery over the previous ninety-seven days, nor had the Government initiated plea negotiations or offered a proposed plea agreement. Defense counsel argued that because the Government failed to meet its stated reasons for excluding STA time between August 26, 2021 and November 30, 2021, the ninety-seven days were not properly excluded and Counts 2, 3 and 5 of the Indictment must be dismissed.[4] Counsel for the Government admitted that he had not provided any discovery or engaged in any plea negotiations during the excluded period. The Court directed defense counsel to prepare a written motion to dismiss, which the Government was to respond to in writing. The Court cautioned the

---

[3] Co-defendant Kimberly Udrea was also charged in Counts 1 through 4 of the Indictment.
[4] Defendant concedes that because Count 1 (conspiracy) and Count 4 (maintaining a drug-involved premises) are not charged in the complaint, there is no basis to dismiss them from the Indictment and they are not included in the motion to dismiss.

Government that considering its apparent inactivity over the previous three months, the Court would "take very seriously" the motion to dismiss.

On January 4, 2022, defendant filed the instant motion to dismiss Counts 2, 3 and 5 of the Indictment. The Government filed a response in opposition on January 18, 2022, and defendant filed a reply on January 26, 2022. (Dkt. Nos. 21, 24) The Court heard oral argument as to the motion to dismiss on January 28, 2022. The parties filed further submissions on February 11, 2022. (Dkt. Nos. 36-39)

## DISCUSSION

"The administration of justice depends heavily upon the prompt processing of criminal proceedings," both to safeguard the rights of the accused and to promote public respect for and confidence in the law. *United States v. Hillegas*, 578 F.2d 453, 456 (2d Cir. 1978); *accord United States v. Gaskin*, 364 F.3d 438 (2d Cir. 2004). To accomplish this goal, the STA provides for the dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within specific periods of time set forth in the statute. *See* 18 U.S.C. § 3161 *et seq.* Importantly, "[i]t is well-established that a criminal defendant has no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016) (internal citations and quotations omitted). Instead, "[i]t is the court and the government that bear the affirmative obligation of insuring the speedy prosecution of criminal charges." *Id.*

Considering the facts here and the arguments raised by Graham, the Court must first determine whether the STA's time limitation for filing an indictment was violated, thus triggering a dismissal of any counts of the Indictment also charged in the complaint. If the Court finds that dismissal for an STA violation is warranted, the Court must then determine

5

whether the dismissal should be with or without prejudice and which counts of the Indictment must be dismissed. The Court now addresses each of these issues in turn.

_Dismissal for an STA Violation is Warranted._

Section 3161(b) of the STA, invoked by Graham here, states that "any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The sanction for a violation of Section 3161(b)'s time limitation is a dismissal of the untimely charges. _Id._ at § 3162(a)(1). However, Section 3161(h) of the STA specifies certain types of delays which are excludable from this thirty-day calculation, some of which are automatically excludable and others of which are dependent on the court making specific findings enumerated in the statute. _See Bloate v. United States_, 559 U.S. 196, 203 (2010). To that end, the STA permits a court to exclude time from the STA clock if, after considering certain factors, the court makes on-the-record findings that "the ends of justice served by the granting [a] continuance outweigh the best interest of defendant and the public in a speedy trial." _See_ 18 U.S.C. § 3161(h)(7)(A) (the "interest of justice exclusion").[5]

During Graham's August 26, 2021 initial appearance on the complaint, this Court excluded ninety-seven days of STA time at the request of the Government and pursuant to Section 3161(h)(7)(A). To that end, the Court made specific findings on the record that the interests of justice were best served in granting the exclusion based upon the Government's representations that it would utilize the three-month period to provide

---

[5] In granting an interest of justice exclusion, courts may consider, _inter alia_, whether failure to grant the continuance would "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." _See_ 18 U.S.C. § 3161(h)(7)(B)(iv).

discovery to defense counsel, allow Graham time to review discovery with his counsel, and engage in plea negotiations. Defense counsel stated that Graham consented to the exclusion of time *based on the Government's representations*. Thus, the exclusion of time was expressly dependent upon the Government taking certain affirmative steps during the excluded period that would potentially inure to the benefit of Graham, specifically providing discovery and engaging in pre-indictment plea negotiations.

Moreover, there is no dispute that the Government failed to engage in any of these activities as promised. The Government concedes that it did not provide any discovery or engage in any plea negotiations during the ninety-seven days between Graham's initial appearance and the filing of the Indictment. In fact, counsel for the Government admits that the Government never once contacted defense counsel regarding the pending charges against Graham during this time.[6] As a result, Graham remained incarcerated for over three months on a criminal complaint with no communication from the Government as to discovery, the status of his case, or the possibility of a pretrial resolution. At the end of the ninety-seven days, Graham was charged in five-count indictment that contained additional and more serious crimes than those charged in the criminal complaint.

The Court finds the scenario here similar to the facts presented in *United States v. Morgan*, where Chief Judge Wolford granted, in part, defendants' motion to dismiss an indictment for violations of the STA. 493 F. Supp. 3d 171 (W.D.N.Y. 2020). In *Morgan*, the Magistrate Judge issued an order excluding STA time, based upon an interest of

---

[6] Counsel for the Government submitted an *ex parte*, sealed affidavit which provides information as to what action the Government took with respect to this case during the excluded period and why the Government never reached out to Graham's counsel during that time. The specific reasons for the Government's failure to engage in discovery and plea negotiations are discussed later in the Report and Recommendation, when the Court addresses whether certain counts of the Indictment should be dismissed with or without prejudice.

justice exclusion, from May 29, 2019 through January 31, 2020. (*Id.* at 205) Judge Wolford found that although the Magistrate Judge's STA order generally excluded all of the time between May 29, 2019 and January 31, 2020, the Magistrate intended to condition the exclusion on the Government producing any voluntary discovery in its possession by July 31, 2019. (*Id.*) Because the Government failed to comply with the July 31, 2019 deadline, Judge Wolford found that the STA clock began to run on August 1, 2019, resulting in a delay of 106 days and necessitating dismissal of the indictment.[7] (*Id.*)

Similarly here, even though the Court's prior order did indeed exclude STA time from August 26, 2021 through November 30, 2021, that exclusion was contingent upon the Government providing discovery to defense counsel and engaging in plea negotiations. Also like the facts of *Morgan*, it is undisputed that these conditions were never met. Thus, the Court vacates its prior interest of justice exclusion and finds that the STA clock continued to run between August 26, 2021 and November 30, 2021.[8]

---

[7] In *Morgan*, Judge Wolford ultimately concluded, for a number of different reasons including a lack of bad faith on the part of the Government, that the dismissal was without prejudice. 493 F. Supp. 3d at 207-16.

[8] The scenario presented here is unique in that the Court is determining, retroactively, that a previously granted interest of justice exclusion of STA time no longer applies. While it is clear that a court may not retroactively determine that the ends of justice support an *exclusion* of time, *United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985), there is little case law addressing a court's ability to retroactively *include* time on the STA clock based on a finding that the interests of justice were not met by the prior exclusion. The Government cites two cases, *United States v. Jain*, 19-CR-59, 2020 WL 6047812 (S.D.N.Y. Oct. 13, 2020) and *United States v. Reichberg*, 16-CR-468, 2018 WL 6599465 (S.D.N.Y. Dec. 14, 2018), where district courts declined a defendant's request to vacate prior exclusions of STA time based on the government's failure to provide certain discovery. However, the Court finds those matters distinguishable. In both *Jain* and *Reichberg*, the government engaged in extensive pretrial discovery only to inadvertently fail to disclose some materials. Differently here, the Government wholly failed to engage in any of the activities on which the interest of justice exclusion was based. Instead, the Court finds the case at bar to be more like *Morgan*, where Judge Wolford concluded that the STA clock started running when the Government failed to do what it had previously promised to do in support of the interest of justice exclusion.

The Court rejects the Government's argument it should not retroactively include STA time because, during the three months between the initial appearance and the Rule 48(b) date, defense counsel never contacted the Government to request discovery, discuss a pre-trial resolution, or inquire about the status of the case. First, it is the responsibility of the Government and the Court, not the defendant, to ensure that the STA is followed and that a case is indicted and tried in a timely manner. Second, the Government has brought serious criminal charges against Graham and carries the burden of proof. Thus, it is the Government that can offer a pretrial or pre-indictment plea to reduced charges and it is the Government that possesses most if not all relevant discovery. Moreover, a defendant cannot be expected to initiate plea negotiations without the benefit of voluntary discovery to aid him in understanding at least some of the Government's evidence against him. Finally, the extension of a Rule 48(b) date alleviates the Government of its statutory responsibility to file an indictment within thirty days. A benefit inures to a defendant during that period *only* if he can review discovery regarding the charges against him and be informed of the possibility and/or details of a potential pre-indictment plea agreement. Thus, when the Government requests an extension of time to file an indictment based on the interests of justice and specific representations as to what it will provide a defendant during the excluded period, the Government has the obligation to ensure those representations are met. It is not a defendant's responsibility to seek out this information from the Government.

For these reasons, the Court finds that the period of time between August 26, 2021 and November 30, 2021 is a non-excluded delay under the STA. *See Zedner v. United States*, 547 U.S. 489, 509 (2006) (noting that the open-ended nature of interest of justice

exclusions could "get out of hand and subvert the [STA's] detailed scheme," and therefore such exclusions must be counteracted with "procedural strictness"). Since the Government did not file the Indictment until more than thirty days after Graham's initial appearance on the criminal complaint, any counts of Indictment that were also charged in the complaint should be dismissed as untimely.

*Dismissal Without Prejudice is Appropriate Here*.

When the Government does not comply with the STA, the court has the discretion to dismiss the charges with or without prejudice. *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993). In determining whether to dismiss charges with or without prejudice, a court shall consider the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of the [STA] and the administration of justice. *See* 18 U.S.C. § 3162(a)(1); *accord Gaskin*, 364 F.3d at 451. The court should also consider "the presence or absence of prejudice to defendant" in deciding whether to dismiss a charge with or without prejudice. *United States v. Taylor*, 487 U.S. 326, 334 (1988). Notably, the legislative history of the STA "confirms that, consistent with the language of the statute, Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a [STA] violation." *Id*. On the contrary, "the decision to dismiss with or without prejudice was left to the guided discretion of the district court, and…neither remedy was [to be] given priority." *Id*. The Court now considers each factor as directed.

*Seriousness of the Offense*

It is well-settled that when an indictment charges a serious offense, a court is more likely to rule in favor of a dismissal without prejudice. *United States v. Kiszewski*, 877 F.2d

210 (2d Cir. 1989). Further, while any felony charge is serious, "there are degrees of seriousness." *United States v. Montecalvo*, 861 F. Supp. 2d 110, 15 (E.D.N.Y. 2021). Indeed, courts are reluctant to declare any federal crime, *especially felonies involving drugs*, as "not serious," and thus drug crimes are regularly, almost automatically, deemed serious offenses for purposes of § 3162(a)(1). *United States v. Peppin*, 365 F. Supp. 2d 261 (N.D.N.Y. 2005) (emphasis added). See *also United States v. Giambrone*, 920 F.2d 176, 178-79 (2d Cir. 1990). ("Any charge related to drug transactions must be considered serious[.]").

Graham seeks the dismissal of Counts 2, 3 and 5. These counts involve the trafficking of cocaine and fentanyl as well as being a felon in possession of ammunition. The federal drug trafficking charges at issue here are, undoubtedly, serious offenses. *See Giambrone*, 920 F.2d at 178-79 (case deemed serious that involved distributing and conspiring to distribute eight ounces of cocaine); *Taylor*, 487 U.S. at 338 (narcotics charge involving 400 grams of cocaine "serious"). Count 5 is related to the illegal possession of ammunition. The Court recognizes that Count 5 is not as serious as the other charges in the Indictment and that it involves the possession of ammunition as opposed to a firearm. However, any crime related to weapons or ammunition is particularly concerning in this instance, where Graham is also charged with both a narcotics conspiracy and with other counts related to drug trafficking, including the trafficking of fentanyl. *See also United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019) (finding that, for purposes of the Bail Reform Act, possession of ammunition, like possession of a firearm, gives rise to some risk that the ammunition may be used in an

act of violence). Because the charges here are, on balance, quite serious, this factor weighs in favor of dismissal without prejudice.

<u>*Circumstances that Led to the Dismissal*</u>

In *United States v. Hernandez*, the Second Circuit held that, "in the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an 'isolated unwitting violation' of the Speedy Trial Act cannot support a decision to dismiss with prejudice." 863 F.2d 239, 244 (2d Cir. 1988); *quoting Taylo*r, 487 U.S. at 339. Later, in *United States v. Wells*, the Second Circuit reiterated that before dismissing with prejudice, a Court should specifically find the government's conduct constituted a "truly neglectful attitude," "bad faith", or a "pattern of neglect." 893 F.2d 535 (2d Cir. 1990). *See also Bert*, 814 F.3d at 82 ("A factually supported finding of a pattern of neglect, thus showing a truly neglectful attitude…may alone suffice to tip the facts and circumstances factor in favor is dismissal with prejudice.").

Here, the Government has submitted an affidavit addressing the facts and circumstances of why it did not provide discovery or engage in plea negotiations in the three months between the initial appearance and the filing of the Indictment.[9] Assistant United States Attorney ("AUSA") Seth Molisani, the AUSA first assigned to this case, was present at the initial appearance on August 26, 2021 and made the representations on behalf of the Government in support of the interest of justice exclusion. In early October of 2021, AUSA Nicholas Cooper, who was not then assigned to this case, began investigating an entirely different matter involving very serious criminal activity by a

---

[9] The Government submitted the affidavit *ex parte* and under seal because it contains specific details of an ongoing criminal investigation and the names of cooperating individuals. Herein, the Court discusses the information in the affidavit as to the general reasons for the delay but does not discuss the specifics of the investigation or the names of the individuals involved.

different individual. In the course of the investigation, Cooper determined that Graham was also involved in this other, unrelated, and serious criminal activity. It was then that Cooper first learned of the pending complaint against Graham in this case, which did not charge Graham with the conduct discovered by Cooper during his separate investigation. Sometime between October 14 and October 21, 2021, Cooper asked Molisani if he could take over the pending complaint against Graham and merge it together with his ongoing investigation of Graham as to the other more serious conduct, and Molisani agreed.

At the time AUSA Cooper took over the case in mid to late October of 2021, Graham had not been provided any discovery nor had the Government initiated any plea negotiations. However, Cooper and Molisani never discussed this fact, nor did they discuss the representations made by Molisani at the initial appearance as the basis for extending the Rule 48(b) conference date. After taking over the case, AUSA Cooper did not provide any discovery to Graham. He also did not reach out to Graham's counsel to engage in plea negotiations or to advise that a plea could not or would not be offered. Instead, Cooper immediately pursued an investigation and indictment as to the additional, more serious charges. In his affidaivt, AUSA Cooper indicates that a plea was not offered as to the complaint because of the severity of Graham's newly discovered, yet- uncharged criminal conduct. Cooper also admits that when he took over the pending complaint from Molisani, he should have conducted a more thorough inquiry into its status including whether discovery had been provided and what had been communicated to defense counsel regarding the possibility of a pretrial resolution.

The Court has no reason to doubt the truth of the Government's representations. Moreover, it is the Government's prerogative as to whether an indictment will be pursued,

what crimes will be charged, and whether a plea will be offered. However, because of the express representations made by the Government at the initial appearance, *it was the Government's obligation here* to provide discovery and communicate with Graham's counsel regarding the potential for a pretrial resolution while the complaint was pending and the time to indict was excluded from the STA clock. Indeed, if and when it was determined that a plea could not or would not be offered, that determination should have been communicated to defense counsel. Moreover, Graham should have been provided with discovery during the relevant period. Instead, Graham remained incarcerated for over three months on a criminal complaint with no discovery, no indication as to whether a plea would be offered, and no information as to the status of the charges against him.

The Government's actions were both negligent and unacceptable. However, there is no evidence in the record that the Government was acting in bad faith or in a premediated and deliberate manner to obtain a strategic advantage.[10] Indeed, the delay here appears to be the result of the transfer of the case; information learned during a new and initially unrelated criminal investigation; and clearly insufficient communication between attorneys for the Government. *See Hernandez*, 863 F.2d at 243 (dismissal without prejudice appropriate, in part, because there was no evidence that the indictment was deliberately delayed to provide the government with a tactical advantage). The Court

---

[10] The Court acknowledges that the Government did receive a benefit here because it had three months to file the Indictment rather than the statutorily prescribed thirty days, and because it was able to continue its investigation of Graham during that time. However, the Court finds that the Government did not deliberately set out or intend to use the excluded period to further its investigation of Graham or pursue additional charges. Instead, AUSA Cooper learned of Graham's other criminal activities and began an investigation of Graham before he was aware of the pending complaint. When he was made aware of the pending complaint, it was Cooper's belief that the seriousness of the other criminal conduct necessitated immediate indictment. Thus, while the delay is the fault of the Government and certainly should not have occurred, the Court does not find that the Government was acting in bad faith.

also finds that the circumstances here do not represent a pattern of neglect or a "truly neglectful attitude." The Government did not allow the case to languish during the delay. According to the affidaivt, AUSA Cooper worked consistently on the matter from mid-October to when he sought an indictment at the end of November. Further, it is this Court's routine practice to grant an interest of justice exclusion of STA time between a defendant's initial appearance and the Rule 48(b) conference date, when agreed upon by both parties, to allow for plea negotiations as well as the exchange of discovery. This represents the first instance where a defendant has moved, before this Court, to dismiss an indictment because those activities did not occur during the excluded period.[11]

In addition, "it is firmly established that the length of the delay, as 'a measure of the seriousness of the speedy trial violation,' is a critical consideration in evaluating the facts and circumstances that led to dismissal." *Bert*, 814 F.3d at 81; *quoting Taylor*, 487 U.S. at 340. Here, Graham remained in jail for ninety-seven days awaiting a possible indictment, fifty-seven more days than is contemplated under the STA. Standing alone, this is not significant enough to constitute a serious violation of the STA warranting dismissal with prejudice. *See United States v. Teman*, 19 Cr. 696, 2019 U.S. Dist. LEXIS

---

[11] When defense counsel made the oral motion to dismiss the Indictment at the conclusion of the arraignment and the Court expressed concern over the Government's actions here, the Court stated: "This goes on a lot, and I don't want it to." At that time, it was the Court's concern that the Government was allowing routine, pre-indictment exclusions of STA time to lag without the exchange of discovery or the commencement of plea negotiations. Based on the record developed here, the Court does not find that to be the case at this time. In his affidavit, AUSA Cooper indicates that between September 2020 and November 2021, he has been assigned at least ten cases charged by criminal complaint. In each of those cases, a Rule 48(b) conference date was set by the Court, and it has been Cooper's standard practice to provide voluntary discovery and informally engage defense counsel regarding the possibility of a pre-indictment resolution. Further, in a letter to the Court dated February 11, 2022, the Government represented that, in the period of January 1, 2016 through February 9, 2022, approximately 47.06% of cases charged by criminal complaint were resolved pre-indictment via plea agreement. (Dkt. No. 38) Thus, the Government and defense counsel do appear to be using pre-indictment exclusions of time for their intended purpose.

220054 (S.D.N.Y. Dec. 20, 2019) ("There is no bright-line test for when a delay is sufficiently long to require dismissal with prejudice. But the 55-day delay here falls short of being such sheer length as to be a dominating consideration dictating that extreme outcome."); *Kiszewski*, 877 F.2d at 210 (holding that district court's finding of 57 days of STA delay, which actually may have been as high as 103, did not require dismissal with prejudice); *Morgan*, 493 F. Supp. at 1717 (the expiration of 36 days on the STA clock was not sufficiently serious, on its own, to warrant dismissal with prejudice).

Because the Government was responsible for the delay here, the Court cannot find that the facts and circumstances of the delay weigh decidedly in favor of a dismissal without prejudice. However, because the Government's conduct does not rise to the level of bad faith, a truly neglectful attitude, or a pattern of negligence, and because the length of the delay was not significant enough to constitute a serious violation of the STA, the Court also cannot find that this factor weighs decidedly in favor of a dismissal with prejudice. Thus, the Court finds the second factor, facts and circumstances of the delay, is either neutral or weighs only slightly in favor of a dismissal with prejudice.

### *Impact of Reprosecution on the Administration of the STA and the Administration of Justice*

In considering the third statutory factor, "district courts should identify and explain the administrative neglect that caused the particular delay at issue, as well as consider any potential administrative changes that might be warranted in light of that violation." *Bert*, 814 F.3d at 83. Further, the Supreme Court instructs that the STA "does not require dismissal with prejudice for every violation" and that dismissal without prejudice is "not a toothless sanction." *Taylor*, 487 S. Ct. at 342 ("At bottom, the District Court appears to have decided to dismiss with prejudice in this case in order to send a message to the

Government that unexcused delays will not be tolerated. That factor alone, by definition implicated in almost every Speedy Trial Act case, does not suffice to justify barring reprosecution in light of all the other circumstances present."). Indeed, as the Second Circuit explained in *Hernandez*, an "understandable desire to ensure strict compliance with the Speedy Trial Act cannot, under the analysis in *Taylor*, justify a dismissal with prejudice." 863 F.2d at 244.

The Court does not find that the impact of reprosecution on the administration of the STA and the administration of justice weighs in favor of a dismissal with prejudice here. As explained above, there is no evidence that the Government acted in bad faith or deliberately flouted its STA obligations to gain advantage in the investigation and indictment of Graham. Instead, the delay appears to be the result of negligence and lack of sufficient communication by Government counsel. Further, this is a unique scenario both because the Court has revoked a previous interest of justice exclusion for failure to produce discovery or engage in plea negotiations, and because this failure does not appear to be part of a pattern or practice by the Government. *See Morgan*, 493 F. Supp. 3d at 213 ("[I]t has been suggested that only where there has been a chronic refusal by the government to turn over discovery material in bad faith, is it appropriate to consider linking those failure to the running of the speedy trial clock."). As explained previously, this Court routinely grants interest of justice exclusions, pursuant to the STA, that result in an extension of time for the government to file an indictment after the issuance of criminal complaint. This practice benefits defendants by allowing for the early exchange of discovery and the potential for a more favorable plea bargain than would be offered post-indictment. An early resolution of criminal cases also benefits the public by

conserving time and resources that would otherwise be spent on longer investigations and trials. Therefore, unless the Government's inaction here were to become a pattern, it is not the goal of the Court to stop or curtail this practice.

Lastly, dismissal without prejudice is not a "toothless sanction" and will require the Government to expend time and resources to file a new indictment should it seek to pursue the dismissed charges against Graham. In light of all the circumstances presented here, the Court finds that dismissal without prejudice will convey a sufficient message to the Government that when it requests a pre-indictment interest of justice exclusion under the representations made here, it must fulfill its responsibilities. For these reasons, the Court finds that the third factor weighs in favor of a dismissal without prejudice. *See United States v. Simmons*, 786 F.2d 479 (2d Cir. 1986) ("[W]here the violation of the Act was unintentional and the resulting delay not overly long, and where [defendant] has not presented evidence of prejudice, we do not believe that the administration of justice would be adversely affected by reprosecution.")

### Prejudice to Graham

In deciding whether to dismiss with or without prejudice, the Court should also consider the "unexpressed factor of prejudice to the defendant." *United States v. Upton*, 921 F. Supp. 100 (E.D.N.Y. 1995). "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340.

Here, Graham has not shown that the delay negatively impacted his ability to defend himself in this case or prepare for trial. *See United States v. Agugbo*, 00 Cr. 94, 2000 U.S. Dist. LEXIS 6914 (SDNY May 19, 2000) (noting that the defendant failed to

show prejudice if the bank fraud charge remained dismissed without prejudice where, among other things, he made no claim that his ability to defend himself had been adversely affected). Indeed, it cannot be overlooked that Graham remained incarcerated on a criminal complaint for a little over two months longer than permitted by the STA. However, as explained above, this length of time is not routinely considered by courts to constitute an egregious or unreasonable delay.

Because Graham was incarcerated for the period of delay, the Court cannot find that he has suffered no prejudice. However, based upon the length of the delay and the fact that the delay did not compromise Graham's ability to defend himself, the Court does not find that he suffered sufficient prejudice to tip the scales in favor of a dismissal with prejudice.

### _Weighing of the Factors_

Here, the Court has concluded that the first factor, the seriousness of the charges, weighs in favor of dismissal without prejudice. The second factor, the facts and circumstances of the delay, is either neutral or weighs slightly in favor of Graham's request for a dismissal with prejudice. The third factor, the impact of reprosecution on the administration of the STA and the administration of justice, weighs in favor of dismissal without prejudice. While Graham was incarcerated during the delay, he did not suffer sufficient prejudice to tip the scales in favor of dismissal with prejudice. On balance, the Court concludes that a dismissal without prejudice is the appropriate remedy for the STA violation in this case.

Lastly, because the Indictment contains additional charges than those contained in the criminal complaint, the Court must now address which counts of the Indictment must be dismissed.

### *Counts 3 and 5 Should be Dismissed.*

The statutory language of Section 3162(a)(1) "requires dismissal only of *such* charge against the individual contained in *such* complaint." *United States v. Napolitano*, 761 F.2d 135, 137-38 (2d Cir. 1985) (instructing that the language of Section 3162(a)(1) must be read strictly). Stated another way, the dismissal remedies of Section 3162(a)(1) apply to pre-indictment delay in pursuing *only* the specific charges alleged in a pending complaint. *Gaskin*, 364 F.3d at 452. The Second Circuit has further instructed that "when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint." *Id.* at 453. Here, defendant concedes that Count 1 (narcotics conspiracy) and Count 4 (maintaining a drug involved premises) are charged for the first time in the Indictment and thus are not subject to the instant motion to dismiss. However, defendant moves to dismiss Counts 2, 3 and 5 of the Indictment on the basis that these charges are also contained in the criminal complaint.

Count 5 of the Indictment and Count 2 of the complaint both charge Graham with being a felon in possession of ammunition on or about August 25, 2021, in violation of Sections 922(g)(1) and 924(a)(2) of Title 18 of the United States Code. Indeed, Count 2 of the complaint and Count 5 of the Indictment charge the same crime and require proof of the same elements. Thus, Count 5 of the Indictment should be dismissed.

Count 3 of the Indictment charges Graham with possession with intent to distribute cocaine on August 25, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code. Count 1 of the complaint charges Graham with possession with intent to distribute cocaine base and fentanyl on that same day, also in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code. As noted above, the Second Circuit holds that an indictment charge is not to be dismissed pursuant to Section 3162(a)(1) when it requires proof of elements distinct from or in addition to those contained in the complaint charge. That is not the case here. The only difference between Count 1 of the complaint and Count 3 of the Indictment is the type of narcotics alleged to have been possessed, and specific drug type is not an element necessary to prove Count 3. *See United States v. Doe*, 297 F.3d 76, 82 (2d Cir. 2002). Because Count 3 of the Indictment *does not* require proof of different elements than Count 1 of the complaint, Count 3 should also be dismissed.

Count 2 of the Indictment charges Graham with possession, with intent to distribute, of 40 grams or more of a mixture and substance containing fentanyl on August 25, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(B) of Title 18 of the United States Code. Defendant contends that this represents the same charge as contained in Count 1 of the complaint. The Court disagrees. Count 2 of the Indictment charges Graham with a violation of Section 841(b)(1)(B) of Title 18 of the United States Code, a subsection not charged in Count 1 of the complaint. Moreover, Section 841(b)(1)(B) requires proof that the substance containing fentanyl and possessed by Graham weighed 40 grams or more. This represents a greater or more serious charge than Count 1 of the complaint and requires the Government to prove an additional element, namely the weight of the

fentanyl possessed by Graham. *See United States v. Gonzalez*, 420 F.3d 111, 125 (2d Cir. 2005) ("The court has recognized the addition of a drug quantity element to a § 841(a) offense to result in a different criminal charge from the same offense pleaded without regard to quantity.") In fact, "neither the language of the statute nor its purpose requires § 3162(a)(1)'s dismissal sanction to reach beyond the original lesser included offense charged in a complaint to greater offenses requiring proof of additional elements that are charged for the first time in a subsequent indictment." *Gaskin*, 364 F.3d at 455 (noting that this rule applies even if the indictment charges "arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.") Because Count 2 of the Indictment requires an additional element of poof than Count 1 of the complaint, it should not be dismissed.

The Court rejects Graham's reliance on *United States v. Peppin* for the proposition that Count 2 of the Indictment should be dismissed because it "gilds an earlier charge" or sets forth a "mere difference in accusational dates. 365 F. Supp. 2d 261 (N.D.N.Y. 2005).[12] In *Peppin*, the Northern District determined that indictment counts containing additional elements than those charged in a criminal complaint must nevertheless be dismissed for STA violations because the government conceded knowing, when it framed the indictment, that its prior complaint violated the STA. Thus, the *Peppin* Court determined that the government's "dilatory approach" to the case and "the disingenuous

---

[12] The *Peppin* Court defined a "gilded charge" as one that "merely annotates in more detail the same charge alleged in the initial accusatory instrument." 365 F. Supp. 2d. In *Gaskin*, the Second Circuit indicated that "we need not here decide whether there are any circumstances where we might apply the concept of gilding to a Speedy Trial Act challenge." 364 F.3d at 455. However, the Second Circuit also noted that "the existence and contours of a gilding doctrine to expand the scope of § 3162(a)(1) beyond the express charges pleaded in a complaint has generally been viewed with skepticism." *Id.* (citing cases).

nature of the added charges" compelled an inference that "the government gilded the indictment, at least in part, to avoid the Speedy Trial Act." *Id.* at 270 ("The definition of gilding has room in it for more than just cases that simply reword the original charges, but also those that demonstrate bad faith effort to avoid the Speedy Trail Act."). Unlike the facts of *Peppin*, there is no indication here that the Government acted in bad faith by purposefully crafting the Indictment to circumvent a known STA violation. Indeed, the Government indicted this matter in the time frame set forth at the initial appearance and therefore believed, albeit erroneously, that it was acting within the bounds of the STA.

In sum, the Court finds that only Count 3 and Count 5 of the Indictment should be dismissed.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Lairon Graham's motion to dismiss the Indictment be granted in part and denied in part (Dkt. No. 19), and that Count 3 and Count 5 of the Indictment be dismissed without prejudice.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***


**SO ORDERED**.


Dated:  May 2, 2022
       Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge